**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AARON HOWARD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 08-CV-2804 |
| v. | ) ) ) | |
| THE BEAR STEARNS COMPANIES INC., THE BEAR STEARNS COMPANIES INC. EXECUTIVE COMMITTEE, JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG and JOHN DOES 1-10, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

*[additional captions follow]*

**DECLARATION OF EDWARD W. CIOLKO IN SUPPORT OF PLAINTIFFS AARON HOWARD AND SHELDEN GREENBERG'S MEMORANDUM IN PARTIAL OPPOSITION TO THE *WEBER* PLAINTIFFS' MOTION FOR (1) CONSOLIDATION (2) APPOINTMENT OF LEAD PLAINTIFFS AND LEADERSHIP STRUCTURE AND (3) ENTRY OF [PROPOSED] PRETRIAL ORDER NO. 1**

| | |
|---|---|
| ESTELLE WEBER, individually, on behalf of the Bear Stearns Companies Inc. Employee Stock Ownership Plan, and all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>THE BEAR STEARNS COMPANIES, INC., CUSTODIAL TRUST COMPANY, JAMES CAYNE, ALAN SCHWARTZ, WARREN SPECTOR, SAMUEL MOLINARO, ALAN GREENBERG, and JOHN DOES 1-20,<br><br>             Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 08-CV-2870 (RWS) |
| ANTHONY PISANO, individually and on behalf of all others similarly situated.<br><br>            Plaintiff,<br><br>      v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>             Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 08-CV-3006 (UA) |

| | |
|---|---|
| HANS MENOS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-10,<br><br>    Defendants. | Case No. 08-CV-3035 (RWS) |
| IRA GEWIRTZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>    Defendants. | Case No. 08-CV-3089 (RWS) |

| | | |
|---|---|---|
| DREW V. LOUNSBURY, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>      vs.<br><br>THE BEAR STEARNS COMPANIES INC. JAMES E. CAYNE; ALAN C. GREENBERG; ALAN D. SCHWARTZ; PAUL A. NOVELLY; FRANK T. NICKELL; FREDERIC V. SALERNO; VINCENT TESE; and JOHN AND JANE DOES 1-10,<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 08-CV-3326 (RWS) |
| SHELDEN GREENBERG, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>      vs.<br><br>THE BEAR STEARNS COMPANIES INC. JAMES E. CAYNE; ALAN C. GREENBERG; JEFFREY MAYER; SAMUEL L. MOLINARO, JR., ALAN D. SCHWARTZ; WARREN J. SPECTOR; and JOHN AND JANE DOES 1-10,<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 08-CV-3334 (RWS) |

| | |
|---|---|
| SCOTT WETTERSTEN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>   vs.<br><br>THE BEAR STEARNS COMPANIES INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, ALAN C. GREENBERG, and JOHN AND JANE DOES 1-10,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. 08-CV-3351 (UA) |
| RITA RUSIN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>   v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. 08-CV-3441 (UA) |

I, Edward W. Ciolko, declare:

1.      I am a partner at Schiffrin Barroway Topaz & Kessler, LLP ("SBTK"), counsel of record for Aaron Howard. I make this declaration in support of Plaintiffs Aaron Howard and Shelden Greenberg's Memorandum in Partial Opposition to the *Weber* Plaintiffs' Motion for (1) Consolidation (2) Appointment of Lead Plaintiffs and Leadership Structure and (3) Entry of [Proposed] Pretrial Order No. 1.

2.      Attached hereto as Exhibit A is a true and correct copy of the March 26, 2008 letter from counsel for Defendant The Bear Stearns Companies, Inc. to the Court.

3.      Attached hereto as Exhibit B is a true and correct copy of the March 27, 2008 letter from the undersigned to the Court.

4.      Attached hereto as Exhibit C is a true and correct copy of the March 27, 2008 letter from Wolf Popper LLP – counsel for Plaintiff Estelle Weber - to the Court.

5.      Attached hereto as Exhibit D is a true and correct copy of portions of a transcript of proceedings in *Hargrave v. TXU Corp.* No. 3:02-cv-2573-K (N.D. Texas).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 14, 2008.

/s/  Edward W. Ciolko
Edward W. Ciolko

3

EXHIBIT A

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS    (1927-1950)
JOHN F. WHARTON    (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212 373-3316

WRITER'S DIRECT FACSIMILE

212 492-0316

WRITER'S DIRECT E-MAIL ADDRESS

bkarp@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MATTHEW W. ABBOTT
MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
RICHARD S. BORISOFF
HENK BRANDS
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y. F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
JULIA TARVER MASON
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
TONY S. MYERSON
JOHN E. NATHAN
CATHERINE NYARADY
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL H. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
LIZA M. VELAZQUEZ
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
JORDAN E. YARETT
KAYE N. YOSHINO
ALFRED D. YOUNGWOOD
TONG YU
T. ROBERT ZOCHOWSKI, JR

*NOT ADMITTED TO THE NEW YORK BAR

March 26, 2008

**By Hand**

Hon. Victor Marrero
United States District Judge
United States Courthouse
500 Pearl Street, Room 660
New York, NY 10007

Hon. William H. Pauley
United States District Judge
United States Courthouse
500 Pearl Street, Room 2210
New York, NY 10007

Hon. Robert W. Sweet
United States District Judge
United States Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

Re: *Eastside Holdings* v. *The Bear Stearns Companies, et al.*, 08 Civ 2793 (Judge Sweet)
   *Howard* v. *The Bear Stearns Companies, et al.*, 08 Civ 2804 (Judge Marrero)
   *Becher* v. *The Bear Stearns Companies, et al.*, 08 Civ 2866 (marked by plaintiffs as
      related to *Eastside Holdings*, pending before Judge Sweet)
   *Weber* v. *The Bear Stearns Companies, et al.*, 08 Civ 2870 (marked by plaintiffs as
      related to *Eastside Holdings*, pending before Judge Sweet)
   *Pisano* v. *The Bear Stearns Companies, et al.*, 08 Civ 3006 (unassigned)
   *Greek Orthodox Archdiocese Foundation* v. *The Bear Stearns Companies, et al.*, 08 Civ
      3013 (Judge Pauley)
   *Menos* v. *The Bear Stearns Companies, et al.*, 08 Civ 3035 (unassigned)

Dear Judges Marrero, Pauley and Sweet:

        This firm represents The Bear Stearns Companies, Inc. ("Bear Stearns" or
the "Company") in the above-captioned litigations. We write to advise you that the
recent case filings before Your Honor Judge Sweet, *Eastside Holdings* v. *The Bear
Stearns Companies, et al.*, filed March 17, 2008, and Your Honor Judge Marrero,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

*Howard* v. *The Bear Stearns Companies, et al.*, filed subsequently on the same day, present common factual issues and defendants with five later-filed cases in this District: (1) *Becher* v. *The Bear Stearns Companies, et al.*, filed March 18, 2008, and (2) *Weber* v. *The Bear Stearns Companies, et al.*, also filed on March 18, 2008, which have both been referred by plaintiffs to Your Honor Judge Sweet as related to *Eastside Holdings*, as well as (3) *Pisano* v. *The Bear Stearns Companies, et al.*, filed on March 24, 2008, which is currently unassigned, (4) *Greek Orthodox Archdiocese Foundation* v. *The Bear Stearns Companies, et al.*, filed on March 25, 2008, before Your Honor Judge Pauley, and (5) *Menos* v. *The Bear Stearns Companies, et al.*, also filed on March 25, 2008, which is currently unassigned.

Defendants in all seven of these cases overlap, and include Bear Stearns, as well as various present and former directors and officers of the Company. Moreover, the factual allegations in all of the cases are essentially the same, focusing on Bear Stearns' exposure to mortgage-related liability, and the Company's public disclosures with respect thereto as its share price declined, culminating in the March 16, 2008 announcement that J.P. Morgan Chase would purchase Bear Stearns.

Thus:

(1)    *Eastside Holdings* is a putative securities class action alleging violations of § 10(b) of the 1934 Act and Rule 10b-5, as well as § 20(a) of the 1934 Act, on behalf of all persons who acquired Bear Stearns' common stock during the class period (defined as December 14, 2006 – March 14, 2008) (*e.g.* ¶¶ 1, 59-65). The claims arise out of Bear Stearns' exposure arising from its mortgage-related activities (*e.g.* ¶¶ 7, 55), the Company's deteriorating liquidity position (*e.g.* ¶¶ 10, 11, 43, 56), and the public disclosures made by Bear Stearns about its financial health throughout the class period (*e.g.* ¶¶ 30-36, 38-39). The suit alleges that false and misleading statements and omissions by defendants resulted in Bear Stearns' stock trading at artificially inflated prices, and that the share price then plummeted as a result of "public revelations" regarding the "truth" about the Company's exposure to mortgage-related liability and its business prospects going forward (*e.g.* ¶ 58) – in particular, a March 16, 2008 announcement that J.P. Morgan Chase would purchase Bear Stearns for $2 per share (*e.g.* ¶¶ 48-49).

(2)    *Howard*, a putative ERISA class action on behalf of ERISA plan participants whose accounts held Bear Stearns' stock, also asserts claims arising out of the Company's mortgage-related activities and public disclosures during the same class period defined in

2008-03-26 12:39        Paul Weiss        212 373-2769 >> Fax Server        P 5/7

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

> *Eastside Holdings* (*e.g.* ¶ 36). In particular, *Howard* alleges that
> defendants imprudently permitted the investment of Bear Stearns
> ERISA plan assets in Bear Stearns common stock throughout the
> class period, despite the fact that defendants knew or should have
> known that investing in Bear Stearns stock was unduly risky due to
> "the foreseeable deleterious consequences to the Company
> resulting from its substantial entrenchment in the subprime
> mortgage market" (*e.g.* ¶ 8). As in *Eastside Holdings*, *Howard*
> alleges that the Company disseminated materially false and
> misleading information during the class period about its exposure
> to mortgage-related liability, its financial health, and its future
> business prospects (*e.g.* ¶ 71), which artificially inflated the stock
> price (*e.g.* ¶ 72). Similarly, plaintiffs also allege that, as
> information was revealed – and, in particular, after the March 16
> announcement that J.P. Morgan would purchase the Company –
> Bear Stearns' stock fell in price (*e.g.* ¶ 103).

(3)  *Becher*, like *Eastside Holdings*, is a putative securities class action
alleging violations of § 10(b) and Rule 10b-5, as well as § 20(a),
on behalf of all persons who acquired Bear Stearns common stock
during the same class period (*e.g.* ¶¶ 1, 59-65). The language of
the *Becher* complaint mirrors that of *Eastside Holdings*, and the
class action allegations are identical.

(4)  *Weber*, like *Howard*, is a putative ERISA class action on behalf of
ERISA plan participants whose accounts held Bear Stearns stock
during the class period (defined as December 14, 2006 – March 18,
2008) (*e.g.* ¶ 1), and the factual allegations are the same (*e.g.* ¶¶ 3,
57). As in *Howard*, *Becher*, and *Eastside Holdings*, the claims in
*Weber* arise out of the Company's mortgage-related activities and
public disclosures made by the Company during the relevant
period, which culminated in the March 16 announcement of the
J.P. Morgan deal and the sudden drop in the share price from the
previous day (¶¶ 35-56).

(5)  *Pisano*, like *Weber* and *Howard*, is a putative ERISA class action
on behalf of ERISA plan participants whose accounts held Bear
Stearns stock during the class period (defined as December 14,
2006 – March 24, 2008) (*e.g.* ¶¶ 1, 4). The factual allegations in
the *Pisano* complaint are the same as in *Weber*, *Howard*, *Becher*
and *Eastside Holdings* insofar as they center on Bear Stearns'
liability and falling share price, and its public disclosures with

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

respect thereto, leading up to the announcement of the J.P. Morgan deal (*e.g.* ¶¶ 85, 86, 88, 89).

(6) *Greek Orthodox Archdiocese Foundation*, like *Eastside Holdings* and *Becher*, is a putative securities class action alleging violations of § 10(b) and Rule 10b-5, as well as § 20(a), on behalf of all persons who acquired Bear Stearns common stock between March 12, 2008 and March 14, 2008 (*e.g.* ¶ 1). As in *Eastside Holdings*, *Becher*, *Howard*, *Weber*, and *Pisano*, the allegations in *Greek Orthodox Archdiocese Foundation* arise out of the Company's public disclosures with respect to its subprime mortgage exposure, financial health and future business prospects as its share price declined – in particular, the Company's announcements on March 12 and 14 – which, plaintiffs allege, resulted in the artificial inflation and then the collapse of the value of Bear Stearns securities (*e.g.* ¶¶ 5, 16-18, 20).

(7) Finally, *Menos* is a putative ERISA class action on behalf of ERISA plan participants whose accounts held Bear Stearns stock during the class period (defined as December 14, 2006 – March 25, 2008) (*e.g.* ¶¶ 1, 2). The *Menos* complaint is identical to the *Pisano* complaint, and therefore also arises out of the same factual allegations at issue in *Eastside Holdings*, *Becher*, *Howard*, *Weber*, and *Greek Orthodox Archdiocese Foundation*.

In light of the common factual allegations in each of these cases, and the overlapping defendants, we respectfully request that all of these cases be assigned to the same judge in the interest of judicial efficiency and coordination. As noted at the outset, two of the subsequently-filed cases, *Becher* and *Weber*, already have been referred to Judge Sweet as related to the first-filed litigation, *Eastside Holdings*. Therefore, we respectfully submit that it would be in the interest of the Court, and the parties, to assign all seven of these litigations, as well as any future related cases, to Judge Sweet.

Thank you for your attention to this matter.

Respectfully yours,

Brad S. Karp

2008-03-26 12:39          Paul Weiss          212 373-2769 >> Fax Server          P 7/7

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

cc:    Clerk of Court
       Southern District of New York

       All plaintiffs' counsel (see attached list)

EXHIBIT B

# SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
### Attorneys at Law

www.sbtklaw.com

280 King of Prussia Road • Radnor, Pennsylvania 19087 • (610) 667-7706 • Fax: (610) 667-7056
2125 Oak Grove Road, Suite 120 • Walnut Creek, California 94598 • (925) 945-0770 • Fax: (925) 945-8792

Writer's Direct Dial: (610) 822-0242
E-Mail: eciolko@sbtklaw.com

March 27, 2008

### VIA FACSIMILE & HAND DELIVERY

| | | |
|---|---|---|
| Hon. Victor Marrero | Hon. William H. Pauley | Hon. Robert W. Sweet |
| United States District Judge | United States District Judge | United States District Judge |
| United States Courthouse | United States Courthouse | United States Courthouse |
| 500 Pearl Street, Room 660 | 500 Pearl Street, Room 2210 | 500 Pearl Street, Room 1920 |
| New York, NY 10007 | New York, NY 10007 | New York, NY 10007 |

Re:    *Eastside Holdings v. The Bear Stearns Companies, et al.*, **08-CV-2793 (Judge Sweet)**

*Howard v. The Bear Stearns Companies, et al.*, **08-CV-2804 (Judge Marrero)**

*Becher v. The Bear Stearns Companies, et al.*, **08-CV-2866 (Referred to Judge Sweet as possibly related to *Eastside Holdings*)**

*Weber v. The Bear Stearns Companies, et al.*, **08-CV-2870 (Referred to Judge Sweet as possibly related to *Eastside Holdings*)**

*Pisano v. The Bear Stearns Companies, et al.*, **08-CV-3006 (Referred to Judge Sweet as possibly related to *Eastside Holdings*)**

*Greek Orthodox Archdiocese Foundation v. The Bear Stearns Companies, et al.*, **08-CV-3013 (Judge Pauley)**

*Mens v. The Bear Stearns Companies, et al.*, **08-CV-3035 (Referred to Judge Marrero as possibly related to *Howard*)**

Dear Judges Marrero, Pauley and Sweet:

My firm represents Aaron Howard, plaintiff in *Howard v. The Bear Stearns Companies, et al.*, 08-CV-2804. I write in response to The Bear Stearns Companies, Inc.'s ("Bear Stearns") letter dated March 26, 2008.

As Your Honors are aware, Bear Stearns' letter requests assignment of the above-referenced cases to Judge Sweet, as the assigned Judge to the first-filed of the above-captioned actions, in the interest of judicial efficiency and coordination. Plaintiff Howard does not object to Bear Stearns' request in principle. Plaintiff recognizes the advantages of coordinating cases complex class cases with overlapping factual predicates.

March 27, 2008
Page Two

Although it does not appear to be Bear Stearns' express intent, Plaintiff Howard would not agree to full "consolidation" of all of the above-captioned actions into one omnibus case for all purposes, pretrial and trial. In his complaint, Mr. Howard alleges that the Bear Stearns and other individual defendants breached their fiduciary duties under the Employee Retirement Income Securities Act of 1974 ("ERISA"), § 502(a)(2), 29 U.S.C. § 1132(a)(2) through the maintenance of Bear Stearns common stock as an investment of The Bear Stearns Companies, Inc. Employee Stock Ownership Plan ("Plan") despite the fact that the defendants knew Bear Stearns stock to be an inherently imprudent investment during the relevant time period. The key factual issue in the ERISA actions listed in Bear Stearns' letter is whether the Bear Stearns stock was a prudent investment for the Plan during the Class Period – an issue that simply does not arise in the putative securities actions listed above.

While some of the fiduciaries are also defendants in the securities actions, not all of them are or will be, and the reverse is also true. Further, and more importantly, the legal framework governing the two sets of lawsuits is completely different, both as to liability and as to damages. For example, the securities actions are governed by the pleading requirements and dictates of the Private Securities Litigation Reform Act (the "PSLRA"), while the PSLRA does not apply to the ERISA actions.

Courts in this district faced with the issue of whether to fully "consolidate" ERISA cases with putative securities class action cases routinely choose separate consolidation (that is, the consolidation of related ERISA cases into one ERISA case but *not* the consolidation of the ERISA cases with the securities cases) with coordination between the consolidated actions for purposes of common or overlapping discovery. *In re AOL Time Warner, Inc. Sec and ERISA Litig.*, 2003 WL 2222795 (S.D.N.Y. Sept. 6, 2003); *In re Global Crossing ERISA Litig.*, 02-CV-72834 (S.D.N.Y. December 10, 2002); *In re WorldCom ERISA Litig.*, 02-CV-3288 (S.D.N.Y. September 18, 2002).

Therefore, Plaintiff supports the transfer of all of the above-captioned cases not already before Judge Sweet, as well as any future filed related actions for appropriate coordination. However, Plaintiff will oppose any request that the "ERISA" case be fully consolidated with the "Securities" actions for *all* purposes in a singe action.

Plaintiff is available upon request to discuss or further brief these or related matters. Further, Plaintiff will make himself available to Your Honors for a status conference, either in-person or telephonic.

March 27, 2008
Page Three


      Thank you for Your Honor's attention to the foregoing.

                    Respectfully submitted,

                    Edward W. Ciolko

EWC/km

cc:     Milo Silberstein, Esq., local counsel for Plaintiff (via electronic mail)
        Clerk of Court, Southern District of New York
        Brad S. Karp, Esq. (via electronic mail)
        Additional plaintiffs' counsel (see attached list) (via electronic mail)

EXHIBIT C

MAR/27/2008/THU 02:47 PM  Wolf Popper LLP          FAX No.                    P. 002/003

LAW OFFICES

## WOLF POPPER LLP

845 THIRD AVENUE

NEW YORK, N.Y. 10022-6601

(212) 759-4600                                                          FACSIMILE: (212) 486-2093
                                                                        WWW.WOLFPOPPER.COM

DIRECT DIAL:
        212.451.9606


                                                        March 27, 2008


By Hand

Hon. Victor Marrero            Hon. William Pauley            Hon. Robert W. Sweet
United States District Judge   United States District Judge   United States District Judge
United States Courthouse       United States Courthouse       United States Courthouse
500 Pearl Street, Room 660     500 Pearl Street, Room 2210    500 Pearl Street, Room 1920
New York, NY 10007             New York, NY 10007             New York, NY 10007


        Re: *Eastside Holdings v. The Bear Stearns Companies, et al.*, 08 Civ 2793 (Judge Sweet)
            *Howard v. The Bear Stearns Companies, et al.*, 08 Civ 2804 (Judge Marrero)
            *Becher v. The Bear Stearns Companies, et al.*, 08 Civ 2866 (case referred to Judge
                Sweet as possibly related to *Eastside Holdings*)
            *Weber v. The Bear Stearns Companies, et al.*, 08 Civ 2870 (case referred to Judge
                Sweet as possibly related to *Eastside Holdings*)
            *Pisano v. The Bear Stearns Companies, et al.*, 08 Civ 3006 (case referred to Judge
                Sweet as possibly related to *Eastside Holdings*)
            *Greek Orthodox Archdiocese Foundation v. The Bear Stearns Companies, et al.*, 08
                Civ 3013 (Judge Pauley)
            *Menos v. The Bear Stearns Companies, et al.*, 08 Civ 3035 (unassigned)
            *Gerwitz v. The Bear Stearns Companies, et al.*, 08 Civ 3089 (unassigned)


Dear Judges Marrero, Pauley and Sweet:

        We represent plaintiff Estelle Weber in *Weber v. The Bear Stearns Companies, et al.*, 08
Civ 2870, filed with the Court on March 18, 2008.  We write in response to the March 26, 2008
letter sent to you by Paul, Weiss, Rifkind, Wharton & Garrison LLP, who represents The Bear
Stearns Companies, Inc., in the above-referenced actions.  We agree with defense counsel that
the above-referenced actions contain common factual allegations and overlapping defendants and
should be assigned to the same judge in the interest of judicial efficiency and coordination.  We
also agree, for the reasons stated, that the cases, as well as any future related cases, be assigned to

Doc. 160239

MAR/27/2008/THU 02:47 PM   Wolf Popper LLP       FAX No.                    P. 003/003

WOLF POPPER LLP

Judge Sweet.

    Thank you for your consideration.

                            Respectfully yours,

                            Lester L. Levy

cc: Clerk of Court
    Southern District of New York
    All plaintiffs' and defendants' counsel (see attached list)

Doc. 160259

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


JAMES BRYANT HARGRAVE          (     CIVIL ACTION NUMBER
                               (
VERSUS                         (     3:02-CV-2573-K
                               (
TXU CORPORATION                (     MARCH 25, 2008



TRANSCRIPT OF HEARING

BEFORE THE HONORABLE ED KINKEADE,

UNITED STATES DISTRICT JUDGE

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

2

```
1              A P P E A R A N C E S:

2
    For the Plaintiff:
3
                        ERIC G. CALHOUN
4                       Travis & Calhoun
                        1000 Providence Towers East
5                       5001 Spring Valley Road
                        Dallas, Texas  75244
6                           972-934-4100

7
                        BRUCE RINALDI
8

9
                        KATHERINE B. BORNSTEIN
10                      Schiffrin Barroway Topaz & Kessler
                        280 King of Prussia Road
11                      Radnor, Pennsylvania  19087
                            610-667-7706
12

13
    For the Defendant:
14
                        DAVID P. POOLE
15                      ANITA M. RIDDICK
                        TXU Legal Department
16                      1601 Bryan Street, 21st Floor
                        Dallas, Texas  75201
17                          214-812-6001

18

19

20  Court Reporter:

21                      RANDY M. WILSON, CSR
                        1100 Commerce, Room 1625
22                      Dallas, Texas  75242
                            214-766-9150
23

24

25
```

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

3

```
 1                    P R O C E E D I N G S:
 2              THE SECURITY OFFICER:  All rise and come to
 3   order.
 4         Hear Ye.  Hear Ye.  Hear Ye.
 5         The United States District Court in and for the
 6   Northern District of Texas at Dallas is now in session, the
 7   Honorable United States District Judge Ed Kinkeade
 8   presiding.
 9         Let us pray:
10         God bless these United States and this Honorable Court.
11         Please be seated.
12              THE COURT:  All right.  This is the case of James
13   Bryant Hargrave, Patrice Hargrave, Brenda Maynard, Linda
14   Price on behalf of all of those similarly-situated versus
15   TXU Corp. and others.  The Cause Number is 3:02-CR-2573-K,
16   set today for a hearing on the approval of the plaintiff
17   allocation, attorneys' fees, and final judgment.
18         Here representing the plaintiff is Mr. Eric Calhoun of
19   Travis & Calhoun.  And you're here and ready; is that
20   correct, sir?
21              MR. CALHOUN:  Yes, Your Honor, I'm here.
22              THE COURT:  And Mr. Bruce Rinaldi.  And you're
23   here and ready, correct, sir?
24              MR. RINALDI:  Yes, Your Honor.
25              THE COURT:  And Katherine Bornstein.  And you're
```

4

```
1    here and ready?
2              MS. BORNSTEIN:  Yes, Your Honor.
3              THE COURT:  All right.  Who's going to speak on
4    behalf of plaintiff?
5              MR. CALHOUN:  Your Honor, I will.
6              THE COURT:  Okay.  That will be great.
7         And here on behalf of TXU is Mr. Poole.  And you're
8    still with TXU?
9              MR. POOLE:  I am, Your Honor, through next Monday.
10   But next Monday will be my final day as an officer and
11   employee of TXU Corp.
12             THE COURT:  And then you're free out in the world
13   looking for a job?
14             MR. POOLE:  For the time being, yes.
15             THE COURT:  All right.  You don't seem too nervous
16   about it, so I'm happy for you.
17             MR. POOLE:  Thank you, Your Honor.
18             THE COURT:  And Ms. Riddick, Anita Riddick.
19             MS. RIDDICK:  Yes, Your Honor.
20             THE COURT:  And you're going to be staying in the
21   future, right?
22             MS. RIDDICK:  Yes, Your Honor.
23             THE COURT:  Okay.  Well, good.  And TXU is now
24   also known as Energy Future Holding Corp.?
25             MR. POOLE:  That's correct, Your Honor.
```

5

```
 1        In connection with the merger last October, we changed
 2   the name of the parent holding company to that long, rather
 3   generic name.
 4        THE COURT:  Okay.  But it still has TXU as one of
 5   its a/k/as?
 6        MR. POOLE:  One of the subsidiaries still uses
 7   TXU.  And, of course, it's the same entity.  It was just a
 8   name change.  So I think it would probably be convenient in
 9   this hearing for us all to refer to it as TXU.
10        THE COURT:  All right.
11        MR. POOLE:  And it would be simpler for the court
12   reporter and probably make more sense in the context.
13        THE COURT:  Okay.
14        All right.  Mr. Calhoun, I'm ready to hear anything
15   you've got.
16        MR. CALHOUN:  Thank you, Your Honor.
17        Basically, two matters before the court that I believe
18   are uncontested.  The first one being the motion for final
19   approval of the settlement and for the plan of allocation
20   for the proceeds of the settlement here.
21        And the second matter being the unopposed application
22   for an award for attorneys' fees, expenses, and for
23   incentive awards for the class plaintiffs.
24        And to-date, Your Honor, no one, to our knowledge, has
25   filed any objections to the class settlement of any kind.
```

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

6

```
1    And the relief requested is unopposed by TXU.

2        And to proceed to the first matter at-hand, the

3    settlement itself, Your Honor, we have a -- a settlement of

4    five years of litigation for 7.25 million dollars for a

5    class of approximately 14,000 and some odd hundred folks,

6    which is, we think, fair, adequate, and reasonable in light

7    of the circumstances of the case, the risks involved in

8    lawsuit, and the applicable standards.

9        The overriding standard, Your Honor, is basically that

10   whether the settlement is fair, adequate, and reasonable,

11   and the product of an arm's-length negotiation between the

12   parties.  And here I think that standard is satisfied.

13       There's also a six-pronged test that the Fifth Circuit

14   has stated for evaluating a settlement; that being whether

15   the proposed settlement is free from fraud or collusion;

16       The complexity, expense, and likely duration of the

17   litigation were it to proceed forward;

18       The stage of the proceedings at which we are in this

19   case at the time of the settlement;

20       The probability of the success on the merits, in other

21   words, the risks and probabilities there;

22       The range of possible recovery in the case;

23       And then, finally, the opinions of counsel, the class

24   members, and the representatives of the class.

25       Respectfully, Your Honor, we believe that each of these
```

7

```
 1    factors weighs in favor of the approval of this settlement.
 2         First of all, based upon the damage estimates on a
 3    theory of the case the range of damages, assuming the class
 4    period that we've -- we've alleged is the one that is
 5    approved -- would have been approved at trial, would have
 6    been between 18 and 22 million dollars, assuming the theory
 7    of loss that -- that we've alleged and which has been used
 8    in other cases like this for evaluating damages based upon
 9    the overpayment for -- the alleged overpayment for stock
10    during the class period.
11         If, as we've noted in the brief, if the class period
12    were extended -- as the court is aware, the stock price
13    dropped at the end of the class period but -- during the
14    class period, but however, once the information was
15    disclosed to the public after the stock price dropped it
16    gradually went back up, and has gone up -- and went up
17    substantially over time.
18         And so if you adjust the period of time for which you
19    evaluate the damages for the class, the damages number
20    gradually goes down under those calculations.
21         So in light of the range of damages we believe that
22    7.25 million, which is about a third, roughly, of the
23    possible damages, given our theory of the case, is a
24    reasonable and fair settlement given the risks of
25    litigation.
```

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

8

1       The second factor in evaluating the settlement is the

2   probability of success on the merits.

3       Again, the fact that the stock price went up so

4   dramatically creates some potential problems for the class

5   in loss causation.  Given that a number -- a lot in the

6   class held onto their stock and it went up.

7       For folks that sold during the time period, there were

8   losses.

9       There also, Your Honor, here, this type of case, an

10  ERISA case, is a complex case.  And to prove loss -- losses,

11  damages, and liability requires expert testimony.  And

12  whenever you have a battle of experts there is risks

13  involved and substantial expense.

14      The next factor, Your Honor, whether or not there's any

15  fraud or collusion here.

16      Clearly, there is not.  This settlement was reached as

17  a product of a substantially long, drawn-out negotiations.

18  There was an independent mediator involved and went back and

19  forth over numerous issues over the course of quite a number

20  of months in order to reach --

21          THE COURT:  Who was the mediator?

22          MR. CALHOUN:  Bill Baiden.

23      And he did a fine job -- we didn't settle at the

24  mediation.  In fact, there was significant gap there.  And

25  he continued to go back and forth and back and forth between

9

1  the parties after the mediation in order to achieve a

2  settlement.

3      And because of the complexity of the case and the need

4  to develop a plan of allocation there was substantial

5  give-and-take back and forth with TXU and with the

6  administrators of the plan in developing a feasible way and

7  an efficient way to allocate the proceeds of the plan.

8      The case settled while this case was on appeal to the

9  Fifth Circuit.  There were substantial risks to both sides.

10  And there was no fraud or collusion here, and was the

11  product of arm's-length negotiation between qualified

12  counsel.

13      Again, the next factor, the complexity --

14          THE COURT:  Let's see, who was the appellant in

15  that case?

16          MR. CALHOUN:  Well, Your Honor, the plaintiffs

17  were the appellant in that case.

18          THE COURT:  Just for the record.  I remember.

19          MR. CALHOUN:  That's correct.

20          THE COURT:  So that's another factor that you had

21  to think about.  I might have been right.

22          MR. CALHOUN:  You might have been right, Your

23  Honor.  And we might have had -- we had substantial risks at

24  that time, certainly, that the Fifth Circuit would have --

25          THE COURT:  I'm not asking you to say that I was,

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

1    but that's a factor you have to think that, wasn't it?

2           MR. CALHOUN:  Absolutely, Your Honor, and we took

3    that into account in this settlement.

4        And if the case had proceeded forward, assuming we had

5    won the appeal and the case had come back down here for, you

6    know, further discovery and trial, as -- the expense of

7    doing that would have been substantial.

8        One of the aspects of the discovery in the case had to

9    do with the European operations of TXU.  And what happened

10   there and what -- what information was publicly available

11   and what should have been made publicly available.

12       And at this point in time, of course, that --

13          THE COURT:  That's because TXU lost a significant

14   amount of money in that -- I guess they eventually divested

15   themselves of that?

16          MR. CALHOUN:  That's correct.

17          THE COURT:  But they lost a lot of money, a

18   billion dollars right before that, right?

19          MR. CALHOUN:  Substantial amount of money.  That

20   was a factor in this case.

21          THE COURT:  And so, because it's so far away and

22   what you have to prove and how you would have to prove it

23   would have been very tough.

24          MR. CALHOUN:  Very difficult.

25       In fact, when we were doing the motion for preliminary

11

1    approval, we had stuck an estimated number in there for the

2    cost of that, just a European discovery alone, given that

3    TXU no longer had control of documents and witnesses there.

4    And I believe Mr. Poole increased that number up to the

5    estimated -- in excess of one million dollar number for that

6    European discovery.  It just really would have been

7    expensive to do all that, given the number of witnesses and

8    documents.

9         THE COURT:  And isn't it true in Europe there's

10   very little discovery, and so you would be fighting upstream

11   to do all of that?

12        MR. CALHOUN:  We would, Your Honor.  The

13   procedures there is not nearly as efficient as they are here

14   in terms of getting witnesses and documents produced.

15        So there would have been a lot of procedural haggling

16   over -- over that.  And getting the cooperation we would

17   need it would have been difficult.

18        THE COURT:  Okay.

19        MR. CALHOUN:  And then, again, the fact that we

20   would have, both sides, would have had expensive expert

21   witnesses to get this case ready for trial.  Taking those

22   depositions and things are a very expensive undertaking and

23   a risky undertaking given the facts of the case, risky for

24   the class, certainly, given the possibility of -- of a

25   lesser or no recovery, certainly given the fact --

12

```
1              THE COURT:  How did you come up with this number?
2              MR. CALHOUN:  Well, Your Honor, it was through,
3    again, a hard-fought negotiation.   There were demands that
4    were certainly at higher numbers and offers at much, much
5    lower numbers when we started out along the road of
6    settlement.
7              THE COURT:  I mean, was it a formula?  Or no?
8              MR. CALHOUN:  There was not really a formula for
9    the number that ended up being the final number.
10             THE COURT:  Okay.
11             MR. CALHOUN:  It was really what, as much as we
12   could squeeze out of them, I think.  And Mr. Poole will
13   address that.  It was a hard-fought case.
14             THE COURT:  And you had a formula for the 18 --
15             MR. CALHOUN:  We did.
16             THE COURT:  -- to 21?
17             MR. CALHOUN:  We certainly had a formula for
18   determining the range of damages that we might recover if
19   we -- we ultimately went to trial in the case.  That was the
20   18 to 22.
21        But in arriving at the settlement we just got the best
22   deal we could -- could possibly get I think for the class in
23   light of the circumstances and the dynamics of the facts and
24   the situation.
25             THE COURT:  Okay.
```

13

```
 1              MR. CALHOUN:  Then, the next factor, the stage of
 2       the proceedings, Your Honor.
 3            Again, we went through, as we've already covered, that
 4       it was on appeal.  We had substantial risks involved.
 5            We did have access during the evaluation of the
 6       settlement and the evaluation of the facts of the case to
 7       substantial documents and deposition testimony that were
 8       taken in other lawsuits involving TXU and the underlying
 9       facts of this case.  There was a whistleblower lawsuit by
10       Mr. Murray, who's referenced in the complaint.  And then
11       another lawsuit, the Mr. Roth case, which there were
12       depositions taken, and we had access to those depositions
13       and documents.  There was testimony provided to us that was
14       taken in the Roth case for review in evaluating the facts of
15       the case that overlapped with the facts of this case and
16       were relevant to it.
17            So, again, I think that factor also goes in favor of
18       the settlement.  This has been a five year process.
19            Finally, the opinions of counsel and the class.
20            Again, I think that counsels' opinion is, on the
21       plaintiffs' side, certainly, that is this is a fair and
22       reasonable settlement and it was the most we could get in
23       the circumstances.
24            And, obviously, here the class had no one --
25       notwithstanding that we sent both -- we had published notice
```

14

1   in the Fort Worth Star Telegram, published notice in the
2   Dallas Morning News.  We had emailed notice to the TXU
3   employees that had accounts.  We have mailed notices to all
4   of the other class members.  We had in excess of 14,000
5   people who received notice.  And yet we received no
6   objections, Your Honor, to the settlement.  I think that
7   speaks volumes about the reasonableness of the settlement.
8           So each of the six factors mentioned in the Fifth
9   Circuit case supports the approval of the settlement.
10          Finally, a final comment, the plan of allocation we
11  believe is fair, reasonable, and adequate here.  The way
12  it's structured each class member will receive a hundred
13  dollar minimum payment that for -- that has -- that's a
14  member of the class.  So each of the 14,000 plus people that
15  are members of the class will receive a hundred dollars
16  deposited to a thrift account.
17          And then the remaining net settlement proceeds will be
18  allocated based upon a formula which attempts to approximate
19  the losses that they suffered during the class period,
20  apportioned among the class members according the
21  calculation of their loss.
22          THE COURT:  Okay.
23          MR. CALHOUN:  And then the next matter before the
24  court would be the application for the attorneys' fees and
25  expenses.

15

```
 1        The --

 2             THE COURT:  Let me stop y'all.

 3        Off the record.

 4             (Discussion off the record.)

 5        MR. CALHOUN:  The -- with respect to the

 6    application for attorneys' fees and expenses, the Fifth

 7    Circuit has recently come out with a couple of opinions in

 8    this area, the in re:  Sulfur Contaminated Fuel litigation

 9    opinion.  And basically has confirmed that the analysis

10    should be based upon a lodestar in a common fund case.

11        And, Your Honor, here we're asking for an award of

12    attorneys' fees of 30 percent of the 7.25 million dollar

13    fund plus $97,000 in out-of-pocket expenses.  And then along

14    with an award for each of the class representatives for

15    $2500 each for their efforts on behalf of the class.

16        The standard, basically, we believe here is to take the

17    number of hours expended at the lodestar, essentially,

18    analysis, and then apply the what are called the Johnson

19    factors from the Johnson case that have been repeated

20    throughout the case law.

21        The fees that we have requested.

22        Here we've got 4300 -- over 4300 hours of time invested

23    by the lawyers on behalf of the plaintiff class over the

24    five year period and substantial amounts of efforts.  And in

25    most cases like this, most of those efforts occurred in the
```

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

16

```
 1    -- outside the courtroom in terms of investigation, the
 2    development of a hundred plus page complaint in this case,
 3    discovery efforts, depositions, and other -- other activity
 4    in the case.
 5         Applying the Johnson factors here, Your Honor, again
 6    the first factor under Johnson is the time and labor that
 7    were required in the case.  Again, 4300 plus hours.
 8         Multiple here in this case, we had a number of issues
 9    with the class representatives where we had folks coming and
10    going as class representatives.  Counterclaims were filed
11    against some of the class representatives, and we had some
12    disputes over that.  And some of those folks dropped out.
13         And in the -- in the issues relating to class
14    certification, we had two class certification motions that
15    were opposed and briefed in the case.
16         And during the process of developing the settlement
17    itself, a substantial amount of time and effort were
18    necessary to develop a -- to investigate the allegations, to
19    develop a plan of allocation, and to document properly the
20    settlement of the case and bring it to fruition and to make
21    sure that the class got adequate notice and all of those
22    things, Your Honor, with respect to the class.
23         The second factor, the novelty and the difficulty of
24    the issues presented in this case.
25         I think there's really no dispute that an ERISA breach
```

17

1    of fiduciary case is a complicated case involving difficult

2    issues of proof.  And, as noted in our brief, there have

3    been numerous -- a number of cases that have been tried in

4    that area where the plaintiffs have been unsuccessful.

5        The issues here with respect to causation and damages

6    make it a difficult and complicated case.

7        The next factor, the amount involved in the case and

8    the results obtained.

9        As we covered earlier, we believe the settlement at the

10   range of a third to 40 percent of the potential damages is

11   an excellent result for the class and supports an award of

12   attorneys' fees and a reasonable amount.

13       The next factor, the skill required, the experience,

14   and ability of the attorneys.

15       Again, ERISA is a complicated area requiring some

16   specialized knowledge and ability, and my cocounsel are very

17   experienced, among the most experienced in the country of

18   doing ERISA class action cases.

19       And, again, the factor of the skill of the opposing

20   counsel.

21       We had capable and ardent opposition in this case.

22   That certainly made it a tough case, Your Honor, for us.

23       The next factor, Your Honor.  Whether the fee is fixed

24   or contingent and the type of fees recovered and the ranges

25   of fees recovered in other cases.

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

18

```
 1          Here, again, it was a contingent fee case.  The
 2    attorneys invested their time and their out-of-pocket
 3    expenses on a contingent basis with a lot of risks.  There
 4    was a substantial risk of a zero result that were assumed by
 5    the plaintiffs' counsel.
 6          And we believe that the 30 percent fee is a reasonable
 7    percentage.  We're in the middle range of that, of this type
 8    of a class action case, and certainly reasonable in light of
 9    the attorneys' fees -- the lodestar attorneys' fees that we
10    have incurred in terms of time on this case.
11          The next factor, Your Honor, the undesirablility of the
12    case.
13          Again, here I think the ERISA cases are complete.
14    Expensive to prosecute to conclusion.  The fact that the
15    stock price here of TXU stock went -- did so well after the
16    class period made it a hard, difficult case and one
17    potentially undesirable and difficult to prosecute.
18              THE COURT:  As a matter of fact, didn't that stock
19    price go to the highest level ever in the history of the
20    company?
21              MR. CALHOUN:  I believe so, Your Honor.
22              THE COURT:  That's right.
23          It did, didn't it?
24              MR. POOLE:  It did indeed, Your Honor.
25          Ultimately, to the buy-out price, Your Honor, in the
```

19

1    merger was 69.25.

2         THE COURT:  I mean, it went from like 10 or 11,

3    12, 15 dollars a share?

4         MR. POOLE:  And on a split-adjusted basis that

5    would have been almost $120 a share, which clearly was the

6    highest amount it had ever been in the history of the

7    company.

8         THE COURT:  Right.  Okay.  That's what I thought.

9    And I'm assuming you would have offered that into

10   evidence?

11        MR. POOLE:  We certainly would have, Your Honor.

12        THE COURT:  Okay.

13        MR. POOLE:  And as well as the other factors that

14   Mr. Calhoun mentioned about the participants' activity in

15   buying the stock at the time.

16        THE COURT:  Okay.

17        MR. CALHOUN:  In fact, a number of -- well, a

18   significant number of class members would have had a

19   substantial value in their accounts, a substantial increase

20   in the value of the accounts between the time of the class

21   period and certainly the trial of the case.

22        Finally, the factor of preclusion of other employment.

23        And substantial amount of time and effort that was

24   required to prosecute the case certainly precluded us from

25   participating in other potential endeavors.

20

1    In sum, Your Honor, with respect to the attorneys'

2    fees, when you evaluate these Johnson factors in light of

3    the lodestar figure in this case of about 1.9 million

4    dollars in time in the case, the multiple that we're asking

5    for of about 1.15 we think is very modest in light of the

6    efforts, time and efforts in the case.  And the requested 30

7    percent fee is reasonable.

8        We also believe that the class representatives should

9    receive the $2500 incentive fee for their participation in

10   this case.

11       It's was -- it's not a popular thing to be a plaintiff

12   against TXU here locally, and a number of them had to face

13   difficulties in staying in the case and give their

14   depositions and those kind of things, spent time assisting

15   with the case and meeting with the attorneys and staying

16   up-to-date with the case.  And I think they deserve that

17   modest incentive.

18       And then, of course, the out-of-pocket expenses as

19   established by the declarations of counsel of about $97,000,

20   Your Honor.

21           THE COURT:  How much was the lodestar number?

22           MR. CALHOUN:  The lodestar was almost 1.9 million,

23   1.87 and some change, Your Honor, in terms of just the

24   hourly numbers based upon the time that was spent.

25       And that was up through the filing of the motion.  It

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS



21

```
 1    doesn't include, like the time today, for preparing for
 2    today's hearing, and those kinds of things.
 3             THE COURT:  You're willing to give up on that?
 4             MR. CALHOUN:  Didn't include that in our
 5    declarations, Your Honor.
 6             THE COURT:  Okay.
 7        All right.  What else?
 8             MR. CALHOUN:  Nothing further, unless my cocounsel
 9    has something that they would like to add.
10             MR. RINALDI:  If the court has some questions I
11    would be happy to try to respond.
12             THE COURT:  No.
13        Let me see counsel.  Off the record.
14        (Discussion at the bench with all counsel present.)
15             THE COURT:  All right.  Back on the record.
16        Anything, Mr. Calhoun?
17             MR. CALHOUN:  Nothing further, Your Honor.
18             THE COURT:  Mr. Rinaldi.
19             MR. RINALDI:  Nothing.
20             THE COURT:  Ms. Bornstein?
21             MS. BORNSTEIN:  Nothing, Your Honor.
22             THE COURT:  All right.
23    Mr. Poole.
24             MR. POOLE:  May it please the court.
25        Just briefly, Your Honor, I do think it appropriate for
```

22

1    me to state on the record and represent to the court that,

2    as the court can observe from the court file, and as I can

3    tell you, this was very hard fought litigation.   It was

4    heavily litigated.   Obviously, the court knows that upon

5    dismissal of the class certification the case was appealed.

6    We did settled this matter while it was on appeal with the

7    assistance of the mediator, as represented to the court by

8    Mr. Calhoun.

9              THE COURT:   You didn't have confidence in my

10   order?

11             MR. POOLE:   I did, Your Honor, but this is --

12             THE COURT:   I'm kidding.

13             MR. POOLE:   This is an area of developing law, as

14   the court may be aware.   And there have been some changes in

15   the law that motivated us to seek to resolve this matter.

16        I'm also pleased to tell the court this is the very

17   last litigation matter associated with the failure of TXU

18   Europe.   And so we did want to put that matter behind us.

19   We want to move the company forward.   So we had a very

20   robust arm's-length, good faith negotiation.   And from the

21   defense perspective, we do think that this settlement is

22   fair, just, and reasonable, and in the best interests of the

23   class.

24        Beyond that, Your Honor, I don't have anything further

25   to state to the court.   We don't oppose the motion and in

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

23

1  fact do support the entry of the final judgment as submitted

2  to the court.  And we will commit the determination of the

3  appropriate attorneys' fees to award the plaintiffs' lawyers

4  to the sound discretion of the court.

5       Although I certainly would say to the court and on the

6  record that this group of plaintiffs' lawyers did litigate

7  this matter very, very hard.  They are very well-qualified

8  in this area of law.  And it was a pleasure to be on the

9  opposite side of them on this matter.

10            THE COURT:  And what did you say the lodestar

11  multiple was in this matter?

12            MR. CALHOUN:  Your Honor, just 1.15.

13            THE COURT:  And your expenses are the $97,969.37?

14            MR. CALHOUN:  Yes, Your Honor.

15            THE COURT:  Let's see, the settlement agreement

16  was September --

17            MR. RINALDI:  26th, Your Honor.

18            THE COURT:  The what?

19            MR. RINALDI:  26th.

20            THE COURT:  Okay.  I've approved the settlement,

21  approved the attorneys' fees based on the lodestar and the

22  multiple of 1.15 at -- it will be a 30 percent of the

23  settlement, $2,175,000; the expenses, the 97,969.37; and

24  $2500 to be paid to each of the settlement representatives.

25       And I've entered a final judgment reflecting that.

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

24

```
1                        (Pause.)
2            THE COURT:  Okay.  All right.  I think that's it.
3       Anything else from y'all?
4            MR. CALHOUN:  Nothing further, Your Honor.
5            THE COURT:  All right.
6            MR. POOLE:  Nothing from me, Your Honor.  It's
7       been a pleasure to have one of my final appearances for TXU
8       to be in front of Your Honor.
9            THE COURT:  Oh, it's been a pleasure working with
10      you.
11           And also you, Mr. Calhoun, to have you again.
12           MR. CALHOUN:  Yes.
13           THE COURT:  And I know for you sometimes it's few
14      and far between that you're able to recover this kind of
15      fee.  So I'm happy for you that you were able to do a good
16      job for these folks.
17           And, you know, for people that lost money, they are
18      going to be able to get money back.
19           MR. CALHOUN:  They are.
20           THE COURT:  It's good to have y'all here.  I'll
21      have you give the documents to Josh.  And he will give you
22      whatever copies you need out of that.
23           Thank y'all very much.  I will come down and shake your
24      hand, and you're free to leave.
25                        (End of proceeding.)
```

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS

CERTIFICATION

```
 1
 2
 3                      C E R T I F I C A T I O N
 4
 5
 6
 7        I, RANDY M. WILSON, CSR, certify that the foregoing is a
 8    transcript from the record of the proceedings in the
 9    foregoing entitled matter.
10
11        I further certify that the transcript fees format comply
12    with those prescribed by the Court and the Judicial
13    Conference of the United States.
14
15        This the 4th day of April, 2008.
16
17
18
19
20                    RANDY M. WILSON, CSR
21                    Official Court Reporter
                      The Negotiation
22                        Dallas Division
23
24
25
```

RANDY M. WILSON, CSR
U.S. DISTRICT COURTS